## MARTIN BROTHERS COMPANY v. LANESBORO CO-OPERATIVE MERCANTILE COMPANY.[1]

November 27, 1936.

No. 30,919.

[1]Reported in 270 N. W. 10.

*Todd & Fosnes, R. H. DeLambert,* and *Carl A. Landis,* for appellant.

*Larson & Gartner, Glen Sawyer,* and *Meighen, Knudson & Sturtz,* for respondent.

HILTON, JUSTICE.

Appeal from a judgment entered by defendant in favor of plaintiff and from an order denying plaintiff's motion to vacate the judgment and for amended findings or a new trial.

Plaintiff is a corporation doing a manufacturing and jobbing business at La Crosse, Wisconsin. Defendant is a coöperative corporation which did a retail general mercantile business at Lanesboro, Minnesota. Since prior to 1923 defendant had bought much of its stock in trade from plaintiff. During most of that period defendant was behind in its payments for that merchandise.

In November, 1930, at which time an amendment to our state constitution empowered the legislature to "limit and otherwise regulate the liability of stockholders or members of corporations and coöperative corporations or associations" (other than banking or trust corporations), defendant was indebted to plaintiff to the extent of several thousand dollars. On April 18, 1931, an act of the legislature [L. 1931, c. 210] relieving stockholders of such corporations of liability for any debts that the corporation might thereafter contract became effective. Under our constitution prior to the amendment above mentioned and statutes enacted thereunder [Minn. Const. art. 10, § 3], a stockholder in a corporation such as was defendant was liable for the corporate debts in the "amount of stock held or owned by him."

Plaintiff claims that in December, 1930, an agreement was made with Dunnum on behalf of defendant and as manager of its store whereby it was understood that two accounts would be opened in the name of the defendant; that one would be called the old account and the other the current account; that the indebtedness incurred prior to November, 1930, was to constitute the old account and all

purchases made subsequent thereto the current account; that any payments thereafter made by defendant were first to be credited to the current account and the balance, if any, on the old account. By this plan the old debts could be kept separate from the later purchases, and plaintiff could enforce, if necessary, the liability of the stockholders of defendant corporation for the obligations incurred by the latter prior to the taking effect of the amendment of 1930. Defendant denies that there was any such agreement.

Since the time of the alleged agreement defendant has paid to plaintiff more than enough to pay off the indebtedness incurred before that date. In this action plaintiff sued on an indebtedness of several thousand dollars for merchandise sold and delivered. Defendant admitted its liability. The only real issue here is whether such indebtedness was that incurred prior to the constitutional amendment of 1930 or subsequent thereto. Assuming that there were two accounts and the payments made were first applied to the current account, as plaintiff contends, then the indebtedness sued upon is for goods sold and delivered prior to the taking effect of the amendment; if there was but one continuing account, as defendant asserts, then the indebtedness would be for goods sold and delivered since that date. There were findings that there was but one continuing account, and from a judgment so entered plaintiff appealed.

The indebtedness here involved arose from numerous purchases ranging in sums from two or three dollars to invoices of several hundred dollars. There is no dispute as to the applicable law. A debtor has the right to direct upon which part of an indebtedness any specific payment is to be applied; or, if the debtor makes no such seasonable manifestation, then the creditor may, within a reasonable time, apply it as best suits his interests. Restatement, Contracts, § 387; A. Y. McDonald Mfg. Co. v. Lima, 187 Minn. 240, 244 N. W. 804; Hawver v. Ingalls, 93 Minn. 371, 101 N. W. 604. If neither the debtor nor the creditor indicates in what manner a payment is to be applied, then it will be considered as having been applied to the earliest matured debt to which the creditor might have applied it, in the absence of other factors. Restatement, Contracts, § 394.

At least until the constitutional amendment of 1930, all payments made by defendant to plaintiff were applied to the earliest maturing obligation. However, plaintiff claims that at a conference had on December 23, 1930, between Dunnum and Martin (president of plaintiff corporation), the agreement to open two accounts was entered into whereby payments made by defendant were first to be credited on the current account and the balance, if any, on the old account. Plaintiff urges that it was only upon this consideration that it agreed to extend further credit to defendant. Dunnum had no recollection of any such conference. Plaintiff claims that on January 7, 1931, a letter written and sent to Dunnum contained, in part, the following:

"Confirming your recent conversation with our L. H. Martin, we want to repeat what we have stated to you on many occasions in the past, that is, the only consideration under which we can continue to carry you for such a large amount as you seem to require is that we do so only in consideration of the stockholders' double liability in effect under the Minnesota law. We suggest that you make this plain to your directors as under this consideration we can arrange to apply your payments on current bills and carry you along for a reasonable time on the old indebtedness."

Plaintiff further claims that another letter written on January 19, 1931, and sent to Dunnum contained the statement: "Our only reason for extending extra time to your company is as explained in our letter to you from our credit department on January 7th." Dunnum had no recollection of ever having received either of the letters.

The power conferred on the legislature by the constitutional amendment of 1930 was not exercised until several months after those letters were written. The first letter purports to confirm an arrangement arrived at in a conference had a few days previously. It seems to suggest that should the double liability provision not be retained as a feature of our corporation law the plaintiff then would have to cease giving defendant any credit at all. That this was a move contemplated for the future appears clear by the state-

ments in the letter,—"make this plain to your directors" and "under this consideration we can arrange." The letter apparently was directed toward plaintiff's future policy rather than toward debts already incurred.

Commencing about the first of January, 1931, plaintiff kept its books in such a manner that its ledger sheets indicated two accounts for defendant. On one of the sheets was a statement, written in pencil by the plaintiff's accountant, to the effect that Dunnum agreed to keep up the current account and reduce the old one as fast as possible. There was no showing that defendant was ever advised of the two accounts. Perhaps a creditor need not notify a debtor as to which obligations a payment is applied where the debtor has given no directions as to the manner of application; see Minn. Anno. Restatement, Contracts, § 391, but, as will appear, here there were directions.

Defendant had dealt with plaintiff for many years—even prior to 1923. During all that time, at least until January, 1931, purchases by defendant were shown in but one account. Whenever plaintiff sent defendant a statement of account it contained the total of the entire amount due, and whenever defendant remitted to plaintiff the remittance form always contained the written statement that the amount paid was to be credited "on account." This policy was not changed after the alleged agreement purportedly was entered into. From January, 1931, until 1934 plaintiff frequently wrote defendant about the latter's indebtedness, but it was always referred to as "our account," "your account," "this account," or "the account." In not one instance was there ever any suggestion that there was more than one account. Between January, 1931, and 1934 many statements of account were sent defendant by plaintiff, but in every one of them the entire indebtedness was totaled all in one amount. Never was there any distinction drawn between new purchases and any balance that might have been left over from a prior time. Such also had been the practice since 1923. From the foregoing it is apparent that both parties at all times, in their dealings with one another, treated the indebtedness as but one continuing account. Their continuance of long estab-

lished practices, together with the instructions on defendant's remittances to apply the payment "on account," was direction to plaintiff to apply all payments as had been the uniform custom in the past.

Plaintiff places much reliance upon its own ledger sheets to prove that two accounts were set up. An analysis thereof forces the conclusion that the sheets must have been kept for plaintiff's own exclusive and unrevealed purpose. They do show two accounts. According to them, defendant made many advance payments on the current account, yet not once were those overpayments credited to the old account. This is not consistent with the terms of the alleged agreement that any balance remaining over after the current account was paid was to be applied to the old account. Had the policy outlined in the claimed agreement been followed, it would seem that the old account would have been credited at the time the payment was received rather than at the end of any particular calendar year.

From January 19, 1931, to December 31, 1931, defendant had a credit balance on the so-called current account, according to plaintiff's ledger sheets, ranging in an amount from $143.08 to $1,158.63. Many of the invoices shown on the ledger were marked "2/10", which in everyday merchandising parlance means that a two per cent discount will be allowed on the invoice price if the obligation is met within ten days from date of billing. Yet in not one instance in 1931 was such a discount shown to have been allowed. From January 9, 1933, to December 27, 1933, the ledger also showed a credit balance on the current account in favor of defendant, but, again, no discounts were allowed on those entries marked "2/10". Thus plaintiff's own books refute any suggestion that there were two accounts. Certainly, had there been, the discounts should have been noted.

At the end of the calendar year of 1932 defendant had a small debit balance on the current account as carried on plaintiff's ledger sheets. This balance then was transferred from the ledger sheet showing the current account to a ledger sheet carrying the old account. Obviously, if there was the arrangement that plain-

tiff contends for, the balance from the current account would hardly have been transferred to that of the old account. Presumably the purpose of setting up the claimed two accounts was to keep separate the various items of account, old and new, so that the old indebtedness could be identified in case it became necessary to hold the stockholders liable for obligations incurred before the amendment of 1930 became effective. Book entries, although some indication of the manner of application of a payment to an outstanding indebtedness, Minn. Anno. Restatement, Contracts, § 391, are not conclusive evidence of it. Second Nat. Bank v. Fitzpatrick, 111 Ky. 228, 63 S. W. 459, 62 L. R. A. 599. Especially should that be true where the book entries are not consistent with the purpose for which the application is claimed to have been made.

Considering the foregoing evidence, it is clear that the findings of the lower court that there was but one continuing account and that the payments made were applied to the earliest maturing obligation are well supported.

Plaintiff complains because defendant had judgment entered against itself without giving five days' notice as required by district court rules. The judgment entered was for the correct amount, $3,018.22. Plaintiff's motion to vacate the judgment because of defendant's purely procedural error was denied. On this appeal the order so doing is attacked. Although the practice adopted in the entry of the judgment was not correct, no prejudice resulted: There can be no just cause for complaint.

Affirmed.