# EUGENE R. KANE AND ANOTHER v. THE OAK GROVE COMPANY AND OTHERS.[1]

April 18, 1946.

No. 34,179.

*O. A. Brecke,* for appellants.

*Russell Smith,* for respondents.

[1]Reported in 22 N. W. (2d) 588.

MATSON, JUSTICE.

Appeal from an order denying defendants' motion for a new trial.

This action was brought by plaintiffs under the Emergency Price Control Act, as amended (50 USCA, Appendix, § 901, *et seq.*), to recover statutory damages for violation of the act in collecting rents in excess of the rental ceiling established thereunder, and for reasonable attorney's fees and costs.

Plaintiffs had been tenants of the Oak Grove Hotel in Minneapolis from 1935 to October 15, 1944. Defendants, by purchase, became owners of the premises on or about March 17, 1944. Commencing about December 1942, the rental ceiling under the act for plaintiffs' apartment was $55. Subsequently, the Office of Price Administration (OPA), by order dated July 21, 1944, declared the rental ceiling for plaintiffs' apartment to be $50 commencing May 6, 1944. Defendants' application for a reconsideration of said rental reduction order was denied August 21, 1944. Prior to July 21, the date of the reduction order, defendants had collected $55 per month for May, June, and July. Plaintiffs paid $50 rent for August, but no rent for September and the first half of October. Just prior to October 2, 1944, defendants brought an unlawful detainer action against plaintiffs to recover possession of the apartment, on the grounds that (1) plaintiffs were doing business in the apartment in violation of their lease, and (2) that they were delinquent in the payment of rent in the sum of $252.65, which delinquent rent had accrued prior to defendants' purchase of the premises. The complaint in unlawful detainer made no reference to the unpaid September rent. In the course of the unlawful detainer hearing, the parties in open court stipulated as follows:

"The plaintiffs [defendants here] hereby agree to release and discharge the defendants [plaintiffs here] and each of them from any further liability whatsoever for the payment of any rent for Apartment 106 in the Oak Grove Hotel up to and including October 15, 1944, said discharge to include the delinquent rent account of $252.65 which accrued prior to the time the plaintiffs acquired said property *and to include as well the rent for the month of September,*

502

*1944, and from October 1st to October 15, 1944,* and the defendants shall have the right to occupy said apartment to October 15, 1944; (2) it is further stipulated that the defendants will vacate Apartment 106 in the Oak Grove Hotel on or before October 15, 1944, * * *." (Italics supplied.)

In the present action, defendants by their answer alleged that plaintiffs had been repaid the rental excess of five dollars per month for May, June, and July, and as a further defense alleged that the foregoing stipulation of release constituted a final settlement and accord and satisfaction of all matters in dispute, inclusive of such excessive rents and any statutory damages or penalties thereto pertaining.

The trial court specifically found that there had been no refund of the excess rent paid for May, June, and July; that the violation of the rental ceiling was neither wilful nor the result of any failure to take protective precautions against the occurrence of a violation; and that the stipulation of release in the unlawful detainer action by its terms did not effect a rental refund and did not include, or effect, a release by plaintiffs of their right to any statutory penalty or damages resulting from the violation of the Emergency Price Control Act. The trial court awarded plaintiffs $25 damages, together with $15 attorney's fees and $10 costs. In its memorandum, the trial court set forth that counsel had admitted that no thought had been given to the penalty or damages at the time the stipulation of release was made, and that, having no equitable jurisdiction, it was powerless to reform a contract failing to conform to the intent of the parties by reason of mutual mistake.

■ The only question necessary to consider upon this appeal is whether the aforesaid stipulation of release constituted an accord and satisfaction of the entire rental controversy, inclusive of any rental refunds and statutory damages or penalties. In effect, the stipulation specifies that for and in consideration of the release by defendants of plaintiffs' obligation to pay delinquent rent in the sum of $252.65, which accrued prior to defendants' acquisition of the property, and in further release of any obligation to pay rent for:

the month of September and the first half of October, and in further consideration of plaintiffs' right to occupy the apartment until October 15, plaintiffs covenanted to vacate such apartment on or before October 15. Clearly, the parties intended to settle their entire controversy and not merely a fractional part thereof. The unlawful detainer was not based on any alleged default in the payment of the current rent for September. Nevertheless, this rent and the rent for the first half of October were brought into the stipulation of release for the obvious purpose of making a final determination of the *whole* controversy. In forgiving the rent for September and the first half of October, the parties plainly intended thereby to include nothing more or less than the net rent actually due after allowing plaintiffs credit for such deductions as they were entitled to by way of refund or statutory damages. The dispute in its entirety and in all its phases, inclusive of unpaid rents, rental refunds, and damages, was based on a single rental relationship between the same parties and pertaining to the same property. In effecting a settlement of the rental controversy as a whole, it was not necessary for the parties to dissect and divide such controversy into its minute parts and then to express a specific separate and independent intent as to each part. It was enough for the parties to intend, and to use words expressing an intent, to settle the rental controversy as a unit. It is immaterial that the parties may not have given separate thought to a fractional but integral part of a controversy which by general intent was to be adjusted in its entirety. Under the circumstances, to hold that a settlement of the entire rental dispute was not effected because the parties, in providing for the cancellation of the rents for September and the first half of October, did not specifically express a separate and independent intent that a credit or offset should be allowed for any rental refunds or damages to which the plaintiffs were entitled, all pertaining to the same rental relationship and dispute, is incredible, inequitable, and contrary to the obvious import, purpose, and intent of their stipulation.

504

. ▆ "* * * Words which admit of a more extensive or more restrictive signification must be taken in that sense which will best effectuate what it is reasonable to suppose was the real intention of the parties." 12 Am. Jur., Contracts, § 231.

There is no justification in the instant case for giving the word "rent" such a narrow and restrictive meaning as to preclude a holding that only the net rent (after making due allowance for offsets or deductions by way of rental refunds and damages) was meant with respect to September and the first half of October. Words employed are servants and not masters of a perspicuous intent and are to be interpreted so as to subserve, and not subvert, the general intention of the parties. Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N. W. 650, 93 A. L. R. 1393; Epting v. Lexington Water Power Co. 177 S. C. 308, 181 S. E. 66, 102 A. L. R. 773; 12 Am. Jur., Contracts, § 241; 6 R. C. L., § 231, p. 841. Although preliminary negotiations cannot be allowed to contradict or vary the plain terms of a written contract purporting to integrate the entire transaction, nevertheless, where the terms or words used are ambiguous or reasonably susceptible of more than one interpretation, such negotiations may be considered in order to determine the meaning and intent of the parties. Wm. Lindeke Land Co. v. Kalman, *supra;* 2 Dunnell, Dig. & Supp. §§ 1817, 1817(a); 12 Am. Jur., Contracts, § 234. Here, the surrounding circumstances as revealed by the preliminary negotiations indicate an unmistakable intent and purpose to effect an accord and satisfaction of the entire rental dispute, and in the furtherance of that intent and purpose the stipulation of release is to be liberally construed.

Reversed.