## WEYERHAEUSER COMPANY (RILCO LAMINATED PRODUCTS DIVISION) v. NELS HVIDSTEN AND ANOTHER.

129 N. W. (2d) 772.

July 10, 1964—No. 39,278.

*Culhane & Culhane* and *Sletten Olson,* for appellant.
*Brink & Sobolik,* for respondents.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the district court denying plaintiff's motion for amended findings or for a new trial.

Defendants are father and son engaged in farming in Marshall County in this state. Rilco Laminated Products Division is a division of Weyerhaeuser Company, a corporation, plaintiff in this action, and for the purposes of this case Weyerhaeuser Company and Rilco Laminated Products Division may be considered one and the same and will be referred to as Rilco.

In the early part of 1960, defendants became interested in constructing a potato warehouse in Stephen, Minnesota, on the right-of-way of the Great Northern Railway Company. While the railway company was joined as a party originally, it was stipulated that the action could be dismissed as against it. Ferragut Construction Company,

Fargo, North Dakota, was in the business of constructing potato warehouses and other things. James S. Ferragut was an officer and probably the sole owner of Ferragut Construction Company and C & F Sales Company, which for purposes of this decision may be considered as one and the same with Ferragut Construction Company. John Ferguson, who will be referred to hereinafter, was a service engineer for Weyerhaeuser Company and, as such, was a representative also of Rilco.

On May 19, 1960, defendants entered into a contract with Ferragut Construction Company for the construction of a potato warehouse in Stephen at a cost price of $80,277. The contract provided for early commencement of the work and completion by August 25, 1960. It provided that payments would be made each month upon statements issued by the contractor, with a limited amount to be held back until completion of the work. The construction was to be in accordance with plans and specifications prepared by Rilco and Ferragut Construction Company. Contemporaneously with the execution of the contract, defendants signed an agreement with Rilco under which they agreed to issue their checks each month for payment of labor and materials in the joint name of Ferragut Construction Company, Inc., and Rilco Laminated Products.

Up to September 13, 1960, no payments had been made on the contract. The work was not progressing according to schedule, and defendants were apprehensive that it would not be completed in time to house their potato crop, which was then being dug. On September 13, a meeting was arranged between James Ferragut, representing his company; Ferguson, representing Rilco; Nels Hvidsten, representing defendants; and Warren A. Saetre, who was then acting as defendants' attorney, in Saetre's office in Warren, Minnesota, for the purpose of procuring some payment on the contract. At that time, Rilco had furnished material which amounted to the sum of $36,673.41. It wanted all this money. Hvidsten contended that the work done up to that time was worth only $40,000. He wanted lien waivers for whatever was to be paid. After a telephone call by Ferguson to his company, the group was informed by Ferguson that Rilco would not furnish lien

waivers until it was paid what it was owed in full. After further discussion, Hvidsten prepared a check for $50,000, payable jointly to Rilco Laminated Products and Ferragut Construction Company, and delivered the check to Ferguson. On it appears: "Part payment on contract labor & materials." Contemporaneously with the execution of this check, Saetre, on behalf of defendants, prepared a letter, which was signed by Nels Hvidsten, in which it was said:

"We are enclosing herewith our check in the sum of $50,000.00 payable to you and the Rilco Laminated Products Company. This is a part payment on our contract dated May 19, 1960. This payment is made to you upon condition you file with us mechanic's lien waivers from all materialmen and laborers including the following: [Eleven claimants are thereafter listed, including Rilco Laminated Products.]

"We also will want adequate assurance from you that all workman have been paid and that no liens will be filed by any of them.

"The balance owing on this contract will be paid to you upon completion of the building and acceptance of same by us."

This letter was delivered to Ferragut in the presence of Ferguson.

Thereafter, Ferragut endorsed the check and sent it to Rilco. Rilco in turn endorsed the check, and on September 16, 1960, credited the whole amount to the account of defendants, showing a credit balance of $13,326.59, which represented payment above what Rilco then had coming. Rilco then drew its check payable to C & F Sales Company and mailed it to Jim Ferragut, C & F Sales Company, in Fargo, North Dakota, with a letter reading:

"Dear Jim:

"Attached is our check for $24,057.50 refund on the $50,000.00 Hvidsten check you submitted.

"*Mr. Mason has kindly agreed not to deduct the entire amount of our Hvidsten account to assist you in your other liabilities on this project.* We will be looking forward to payment of the remaining balance in about two weeks, when you receive the balance of $37,000.00 from Mr. Hvidsten." (Italics supplied.)

Ferragut never used any part of this remittance to pay for any labor

or material on this job. Shortly thereafter he became insolvent and went into receivership, leaving many unpaid bills on the job. As a matter of fact, he did not pay any of the bills on this contract. Liens were filed by laborers and materialmen, the exact amount of which does not appear from the record, but, in any event, Ferragut later authorized defendants to settle these outstanding bills up to the amount of the balance due on the contract. It is conceded that, together with the $50,000 payment made on September 13, defendants have paid out more for work and material than the contract price which they were obligated to pay to Ferragut.

Both Nels Hvidsten and Warren Saetre testified that at the meeting on September 13 both Ferragut and Ferguson were informed that Rilco was to take out of the $50,000 check all it had coming. This is disputed by Rilco, its contention being that it was to take out of the check only its proportionate share and that it still has $10,777.47 coming. This amount includes $46.56 for material furnished after September 13, over which there is no dispute. Inasmuch as defendants contended that Rilco had been paid in full, they refused to pay the former amount, and Rilco thereupon filed a mechanics lien and brought this action to foreclose it.

Plaintiff's principal contention is that the testimony of Hvidsten and Saetre as to the instructions given to Ferragut and Ferguson on September 13 was inadmissible under the rule prohibiting parol evidence to vary or contradict the terms of a written contract or instrument. The trial court admitted this evidence over the objection of plaintiff on the theory that Rilco was not a party to the instrument and therefore could not invoke the parol evidence rule. If the testimony of Hvidsten and Saetre is admissible, the evidence amply sustains the finding that Rilco accepted the $50,000 check upon condition that it would take out of it all it had coming and file a lien waiver for the amount received; that it did in fact receive payment in full and credited the Hvidsten account for more than enough to discharge the account; and that when it remitted to Ferragut part of what it had coming it did so in direct violation of the conditions upon which it had accepted the check and thereupon took its own chances of being paid by Ferragut. As far as

defendants are concerned, the debt was paid. The remittance to Ferragut was in effect an advance, for the repayment of which Rilco relied entirely upon the credit of Ferragut.

The trial court held that the testimony of Hvidsten and Saetre was admissible for the reason that Rilco was not a party to the contract.[1] Even if it is admitted that Rilco, as a copayee of the check and therefore bound by the letter of instructions as to its application, was a party to the contract, the testimony of Hvidsten and Saetre did not offend the parol evidence rule in this case. A debtor may direct where a payment is to be applied.[2] Where a debtor directs payment in a certain way, parol evidence is admissible to establish such direction.[3]

Where a written instrument is ambiguous or incomplete, an oral agreement made contemporaneously with it is admissible, not to vary the terms of the written instrument but to explain the intentions of the parties and their subsequent conduct.[4] The general rule is stated in Kane v. The Oak Grove Co. 221 Minn. 500, 504, 22 N. W. (2d) 588, 590, as follows:

"* * * Although preliminary negotiations cannot be allowed to contradict or vary the plain terms of a written contract purporting to integrate the entire transaction, nevertheless, where the terms or words used are ambiguous or reasonably susceptible of more than one interpretation, such negotiations may be considered in order to determine the meaning and intent of the parties."[5]

---

[1]Schlecht v. Schlecht, 168 Minn. 168, 209 N. W. 883; Alton v. Hecht, 184 Minn. 271, 238 N. W. 482; Johnson v. Mugg, 261 Minn. 451, 113 N. W. (2d) 1; State, by Lord, v. Rust, 256 Minn. 246, 98 N. W. (2d) 271; 2 Jones, Evidence (5 ed.) § 483; 7 Dunnell, Dig. (3 ed.) § 3396.

[2]A. Y. McDonald Mfg. Co. v. Lima, 187 Minn. 240, 244 N. W. 804; Martin Brothers Co. v. Lanesboro Co-op. Merc. Co. 198 Minn. 321, 270 N. W. 10.

[3]Rugland v. Thompson, 48 Minn. 539, 51 N. W. 604; Minneapolis Brg. Co. v. Yahnke, 148 Minn. 178, 181 N. W. 331.

[4]Fountain v. Oreck's Inc. 245 Minn. 202, 71 N. W. (2d) 646. See, also, Tiedt v. Johnson, 151 Minn. 288, 186 N. W. 779; Germania Bank v. Osborne, 81 Minn. 272, 83 N. W. 1084.

[5]See, also, Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252

■ Where a written instrument does not show the whole agreement of the parties, parol evidence is admissible to show the parts omitted.[6]

■ It is the contention of plaintiff that at the time the $50,000 check was delivered on September 13 there were bills outstanding amounting to approximately $68,000. It further contends that, inasmuch as the $50,000 would not pay all the outstanding bills listed in the letter of instructions, Rilco and the others were entitled to only a pro rata share of the payment made. The trouble with this contention is that it goes directly contrary to the letter of instructions, which specifically required that lien waivers be furnished for all payments made out of the check. At best, it must be said that the letter of instructions was ambiguous or incomplete in that it failed to state who should be paid and how much if the check was insufficient to pay all the claimants listed in the letter of instructions. Under these circumstances, parol evidence was admissible to resolve the ambiguity, and the testimony of Hvidsten and Saetre, if accepted by the factfinder, clearly established that Rilco was to take all it had coming out of the check as joint payee. Rilco had no right to cash the check at all unless it adhered to the conditions upon which it was delivered.

■ Plaintiff also complains of the fact that when defendants made settlement with other claimants after being authorized to do so by Ferragut, they ignored the provisions of the original agreement with Rilco that checks should be made payable jointly to Ferragut and Rilco. At the time defendants settled with other claimants Ferragut was admittedly insolvent. Rilco had been paid in full except for $46.56, which the court allowed in this action, as far as defendants were concerned. There was no longer any need to protect Rilco, and it is not in a position to complain. Defendants had no performance bond. Upon the insolvency of Ferragut, defendants were forced to step in and make

---

N. W. 650, 93 A. L. R. 1393; Lundstrom Const. Co. v. Dygert, 254 Minn. 224, 94 N. W. (2d) 527; 2 Conrad, Modern Trial Evidence, § 819; 2 Jones, Evidence (5 ed.) § 484; Steller v. Thomas, 232 Minn. 275, 45 N. W. (2d) 537.

[6]See, Jimmerson v. Troy Seed Co. 236 Minn. 395, 53 N. W. (2d) 273.

good on Ferragut's obligations or run the risk of having liens filed against their building. We fail to see how Rilco could be hurt as long as it received all it had coming from defendants. To be sure, if payment had been made jointly to Ferragut and Rilco according to the original agreement, which then had become impossible of performance by virtue of Ferragut's insolvency, Rilco might have been able to collect the balance which it had coming from Ferragut, but that would have left defendants where they still would have had to pay the amount over again to other claimants or be confronted with mechanics liens that they would have to discharge or lose their building. Rilco's loss, if any, was due entirely to its own reliance on the credit of Ferragut after it had enough money in its possession to be paid in full, and if anyone must stand the loss it is only fair that the one who made it possible should do so. We find no reversible error.

Affirmed.