## LUNDSTROM CONSTRUCTION COMPANY v. ANDREW B. DYGERT AND ANOTHER.

94 N. W. (2d) 527.

January 30, 1959—No. 37,450.

*Dygert & Riordan,* for appellants.
*O. A. Brecke* and *J. Robert Nygren,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendants' motion for a new trial.

This is an action by plaintiff, a building contractor, to foreclose a mechanics lien. Plaintiff and defendants entered into a written contract on January 9, 1953, for the construction of a private residence for defendants. Six blueprints (or plans) and a four-page "Description of Materials" (specifications) were also prepared. The contract price was $45,000. Work began at the Lake Minnetonka site in January 1953 and continued sporadically until December 1953, although the job was substantially completed in August 1953. As required by the contract, defendants made large monthly payments. By September it was clear that defendants were dissatisfied with several aspects of the work. Defendants, by letter of September 1, 1953, informed plaintiff that they would not pay the August bill "until complete [lien] waivers are received * * *." Plaintiff furnished defendants with several lien waivers

of subcontractors, and on October 6, 1953, plaintiff also executed his own mechanics lien waiver. Four days after receiving plaintiff's lien waiver, defendants made a payment of $5,494; leaving a balance of $6,322.73 still owing under the contract. Defendants have made no further payments. Plaintiff brought this action to recover not only such contract balance but also $3,056.39 for "extras."

Contrary to defendants' contention, the trial court held that plaintiff's lien waiver was not a complete waiver and that he was entitled to a mechanics lien upon the premises for the entire balance due him, and further held that plaintiff's action was not barred by his failure to pay the subcontractors as required by the building contract provision authorizing defendants to withhold payment until he had done so. The trial court, after allowing defendants a credit of $923.24 for expenses incurred in correcting defects in plaintiff's work, awarded plaintiff the sum of $7,595.80 which sum included $2,196.34 for extras. The court also allowed plaintiff attorneys' fees and costs and adjudged plaintiff's lien be foreclosed by a sale of the premises.

Upon this appeal from an order denying defendants' motion for a new trial, we have these issues: (1) Was plaintiff's October 6, 1953, lien waiver a complete waiver of his mechanics lien rights? (2) Did the trial court err in excluding defendants' exhibit 16, a memorandum which was used in the preliminary negotiations to indicate the building details to be included in the subsequently drawn building specifications, when such memorandum was offered for the sole purpose of clarifying ambiguities in the building specifications? (3) Was plaintiff's action barred because of a building contract provision authorizing defendants to withhold payment until all subcontractors had actually been paid even though they had signed lien waivers? (4) Was plaintiff entitled to recover for "extras" when he at no time complied with a contract provision requiring that all costs of "extras" be first agreed upon in writing? (5) Are the trial court's findings as to plaintiff's "extras" and defendants' "credits" supported by the evidence?

■ We turn to the first issue as to whether plaintiff's lien waiver was a complete waiver of all his mechanics lien rights or only a partial waiver. The waiver consisted of a standard form containing blanks which plain-

tiff had filled in on a typewriter.[1] In the receipt portion of the form plaintiff acknowledged full payment of all "Carpenter labor, dishwasher & disposal." The final three lines of the form, which remained unchanged, stated explicitly that plaintiff "waives *all* rights * * * to file mechanics' liens against said premises for labor, skill or material furnished to said premises *prior to the* date hereof." (Italics supplied.)

There is no merit in plaintiff's contention that the lien waiver was a partial one limited to the specified items of "Carpenter labor, dishwasher

---

[1]In so far as here pertinent the lien waiver form, as filled out and executed by plaintiff, read as follows (the blanks filled in with a typewriter are italicized):

RECEIPT AND WAIVER OF MECHANICS' LIEN RIGHTS APPROVED BY
MINNEAPOLIS REAL ESTATE BOARD

---

N. B. It is important that the following directions be closely followed as otherwise the receipt WILL NOT BE ACCEPTED.

1. This is a LEGAL INSTRUMENT and must be executed accordingly by officers of corporations and by partners of co-partnerships.

2. It is important that ALL the blanks be completed and that the AMOUNT PAID BE SHOWN.

3. If payment is not in full to date, so state. SHOW UNPAID BALANCE, and strike out last three lines.

4. A receipt similar to this or legal waiver of lien rights will be required for all plumbing, heating and plastering material, etc.

5. NO ERASURES OR ALTERATIONS MUST BE MADE.

---

...... *Oct. 6* ...... *1953*
(DATE)

The undersigned acknowledges having received payment of..............
........... *One &*........................................................*no* DOLLARS ($*1.00*)
             (Amount Paid)      $\overline{100}$

from.......................................................in full payment of
             (Name of Payor)

all *Carpenter labor, dishwasher & disposal*...........................
           (Kind of Material or Labor)

by the undersigned delivered or furnished to (or performed at)..........
.......... *A. B. Dygert Residence*................................
.......... *Lafyette Bay, Mtka.*...................................
        (Street Address or Legal Description)

and for value received hereby waives all rights which may have been acquired

& disposal." Partial waivers of mechanics liens are recognized,[2] but to be effective as such they must be properly drawn. In Decatur Lbr. Co. v. Crail, 350 Ill. 319, 324, 183 N. E. 228, 230, the court said:

"* * * While a waiver of lien *for a clearly expressed special purpose* will be confined by the courts to the purpose intended, yet where a general waiver is executed and there is nothing in the context to show a contrary intention there is nothing left for the court to do but enforce the contract as the parties have made it." (Italics supplied.)

■ Here the plaintiff in clear and express terms waived *all* his lien rights for labor or materials furnished prior to the date thereof, despite the fact that the waiver provision was preceded by an acknowledgment of receipt of payment for specific items. Even if we assume that the preceding receipt provision in some way modified the explicit and unqualified lien waiver which immediately followed, the resulting modification at most created an ambiguity. An ambiguity as to the scope or completeness of a lien waiver is to be resolved by taking into consideration the purpose for which the lien waiver was executed.[3] In this case plaintiff executed the waiver in response to defendants' demands for *complete* waivers as a condition to the making of further payments. We also have the significant circumstance that plaintiff used a printed form which on its face carried the admonition, *"If payment is not in full to date, so state. Show unpaid balance, and strike out last*

---

by the undersigned to file mechanics' liens against said premises for labor, skill or material furnished to said premises prior to the date hereof.

. . . . . . . . . . . . . . . . . . . . . . . . . .

By *Lundstrom Construction Co* . . . . . . . .
By/S/ *L. N. Lundstrom*
. . . . . .*Pres*. . . . . . .
(TITLE)
Address . . . . . .*5618 Concord Ave*. . . . . . .

[2]See, Saginaw Lbr. Co. v. Stirling, 305 Mich. 473, 9 N. W. (2d) 680; Ottersen v. Zerowski, 267 Ill. App. 91; Decatur Lbr. Co. v. Crail, 350 Ill. 319, 183 N. E. 228; 57 C. J. S., Mechanics' Liens, § 222.

[3]Hillhouse v. Duca, 101 Conn. 92, 125 A. 367; Bruce Const. Corp. v. Federal Realty Corp. 104 Fla. 93, 139 So. 209; see, Crane Co. v. Advance Plumbing & Heating Co. 177 Minn. 132, 134, 224 N. W. 847, 848.

*three lines.*" (Italics supplied.) Despite this admonition, plaintiff did not strike out the last three lines but let them stand as an absolute renunciation of all his lien rights.

In Crane Co. v. Advance Plumbing & Heating Co. 177 Minn. 132, 224 N. W. 847, where a materialman's letter releasing certain lien rights was construed to determine if a third-party lender was justified in relying upon the release in advancing mortgage loan money, the decision holding the release to be a complete waiver was in part based on estoppel. In construing the lienor's letter of release, we appropriately pointed out that the lienor's *expressed* intent and not his actual intent controls. In so doing we said (177 Minn. 135, 224 N. W. 848):

"* * * Such releases are ordinarily furnished contractors to enable them to get money from somebody. * * * So when money is paid upon the faith thereof, as the parties must expect it to be, the releasor cannot then qualify or limit the reasonable purport of his own language by some mental reservation of his own, or some remote and far-fetched implication to which his language is susceptible only when read with no reference to the circumstances of its origin and intended use."

Since we conclude that plaintiff completely waived his lien rights by his written waiver, we need not pass on the issue of whether plaintiff failed to segregate lienable and nonlienable claims in his lien statement and whether he exercised bad faith in claiming more in his lien statement than was justly due him. See, M. S. A. 514.74.

■ Did the trial court err in refusing to admit in evidence defendants' exhibit 16, the memorandum which was used by the parties in their preliminary negotiations to indicate the building details to be incorporated in the subsequently drawn specifications? It was offered for the sole purpose of clearing up ambiguities in the specifications which were drawn by the plaintiff and later signed by the parties. The rule is well settled that:

"* * * Although preliminary negotiations cannot be allowed to contradict or vary the plain terms of a written contract purporting to integrate the entire transaction, nevertheless, where the terms or words used are ambiguous or reasonably susceptible of more than one interpretation, such negotiations may be considered in order to determine

the meaning and intent of the parties." Kane v. Oak Grove Co. 221 Minn. 500, 504, 22 N. W. (2d) 588, 590.

Were the specifications ambiguous? Plaintiff's expert witnesses, an architect and a builder, who inspected the premises to ascertain if there had been a compliance with the plans and specifications and with instructions for additional work, in their written report commented specifically on the looseness of the specifications and plans as to wording and detail for a project of this size and cost range. They indicated that it was difficult to pass on the work because of the indefiniteness of the information supplied by the specifications. These experts put it mildly. This court, after examining the specifications can only conclude they were so lacking in specific details and so loosely drawn that they were ambiguous and wholly inadequate as a guide to the construction work agreed upon by the parties. Under the circumstances it was prejudicial error not to admit in evidence defendants' exhibit 16 for the sole purpose of clearing up the ambiguities.[4]

Although a new trial is necessary because of prejudicial error in failure to admit evidence, it is nevertheless desirable to consider certain other issues which are likely to arise again.

▇▇▇▇ Is an action by plaintiff barred by defendants' contractual right to withhold payment to such extent as may be necessary to protect them from loss on account of plaintiff's failure to pay the subcontractors?[5] Although the subcontractors had executed waivers of any lien rights they had against the premises, it was admitted that plaintiff, at the time of trial, still owed them over $9,000. Clearly no express or implied contractual relationship was ever created between defendants and the sub-

---

[4] In the absence of prejudicial error, if plaintiff fails to establish his right to a lien but does establish a cause of action for the recovery of money, he may have an ordinary personal judgment. Where, however, prejudicial error has occurred there must be a new trial. See, Smith v. Gill, 37 Minn. 455, 35 N. W. 178; 12 Dunnell, Dig. (3 ed.) § 6113.

[5] The building contract provision provides:

"ARTICLE VII. The Owners may withhold * * * the whole or a part of any application for payment to such extent as may be necessary *to protect the Owners from loss* on account of: * * * (c) Failure of the Contractor to make payments properly for materials or labor." (Italics supplied.)

contractors. Defendants, however, contend that until the subcontractors are paid in full they are exposed to loss on the theory that an action in quasi-contract in favor of the subcontractors lies against them as owners of the property. In support of their contention they cite Karon v. Kellogg, 195 Minn. 134, 261 N. W. 861, which involved an action by a *contractor,* not a subcontractor, against the owner. The contractor's lien was disallowed. Apparently the existence of a valid contractual relation was challenged for want of an alleged agent's authority to represent the owner. The trial court, however, gave judgment to plaintiff contractor for $160, the value of the labor and material he furnished. On appeal this court stated (195 Minn. 136, 261 N. W. 862):

"* * * Having been so benefited, defendant is liable, *quasi ex contractu,* independently of contract or agency. Otherwise he would be unjustly enriched at the expense of plaintiffs."

The nature and limitations of the quasi-contractual liability imposed on the owner in the Karon case become clear when it is borne in mind that quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. In fact quasi-contractual obligations are imposed despite, and frequently in frustration of, the intention of the parties.[6] They are obligations created by law for reasons of justice. Under the theory of quasi-contract, the right to recover is governed by principles of equity, but the remedy—the obligation upon which the right of recovery rests—is created and imposed by law to prevent unjust enrichment at the expense of another.[7]

---

[6]Town of Balkan v. Village of Buhl, 158 Minn. 271, 274, 197 N. W. 266, 267, 35 A. L. R. 470, 473.

[7]Roske v. Ilykanyics, 232 Minn. 383, 389, 45 N. W. (2d) 769, 774; Dusenka v. Dusenka, 221 Minn. 234, 238, 21 N. W. (2d) 528, 531; Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 275, 181 N. W. 584; Carr v. Anderson, 154 Minn. 162, 164, 191 N. W. 407, 26 A. L. R. 557, 558; Restatement, Contracts, § 5, *comment a,* and Minnesota Annotations, pocket supplement (1934) § 5; 12 Am. Jur., Contracts, § 6; 9 Dunnell, Dig. (3 ed.) § 4300. In Roske v. Ilykanyics, *supra,* we pointed out that "The legal remedy being adequate, the court may not decide the case as one sounding in equity and thereby deprive the parties of a right to a jury trial in the absence of a waiver of such jury."

In the Karon case recovery in quasi-contract was properly allowed to prevent the property owner from being unjustly enriched at the expense of the contractor. Obviously in the present case quasi-contract has no application. If the defendant property owners, in reliance upon the lien waivers of the subcontractors, paid plaintiff for the labor and materials furnished in the building of their residence, there would here be no unjust enrichment as a basis for a recovery in quasi-contract. Whether an unusual situation might arise under other facts, which would result in unjust enrichment unless subcontractors were permitted to recover in quasi-contract, we need not now determine. Aside from unjust enrichment, which is an element not involved here, it is generally recognized that, other than the statutory right to a mechanics lien or other special statutory remedies, subcontractors and materialmen have no right to a personal judgment against the owner *where there is no contractual* relation between them.[8]

Since the subcontractors have here waived their liens; since no contractual obligation exists between them and the defendants; and since they have no basis for an action in quasi-contract, it follows that defendants are exposed to no loss by reason of plaintiff's failure to pay them. Thus, the express purpose for the contract clause in question has been satisfied and the contract clause may not be used as a bar to plaintiff's present action.

■ Defendants also assert that plaintiff is entitled to receive nothing as "extras" because of a contract clause reading:

"The value of any such extra work or change shall be determined by cost and a fixed fee to be agreed upon in advance in writing by Contractor and Owners."

Plaintiff admits he never informed defendants that there were to be any charges for "extras." In one letter in which Mr. Dygert requested that some changes be made, he specifically requested that plaintiff reply to him if there was to be any "extra" cost. Plaintiff did not, at any time, respond. In fact, in his statement of November 23, 1953, plaintiff

---

[8] 36 Am. Jur., Mechanics' Liens, § 284; Note, 14 L.R.A. (N.S.) 1036; Ponti v. Eckels, 129 Wis. 26, 108 N. W. 62; Alberti v. Moore, 20 Okl. 78, 93 P. 543.

still listed:

> "Contract price ..................... $45,000.00
> Total all payments received to date .... $38,677.27
>
> Balance ......................... $ 6,322.73"

Plaintiff's first demand for "extras" was in his lien statement of February 20, 1954. The rule in this state is that such a contract provision is not of the essence of the contract, but is rather a detail in the performance, intended as a check upon the contractor, *and may be insisted upon or waived* as suits the convenience of the owner. Walberg v. Jacobson, 143 Minn. 210, 213, 173 N. W. 409, 411; 4 Dunnell, Dig. (3 ed.) § 1859.

The trial court, in awarding plaintiff a number of "extras," implicitly found that there had been a waiver of this provision. Whether it was waived is a close question in view of defendants' specific written request for plaintiff's intentions as to any "extra" charges, and plaintiff's failure to *ever* mention any extra charges to defendants prior to the filing of the lien statement. Since there must be a new trial for other reasons, the question of waiver should be specifically considered by the trier of fact.

Defendants further urge that the trial court's findings as to "extras" and "credits" are not supported by the evidence. We find it unnecessary to consider this issue since there must be a new trial on all factual issues with a proper regard to the evidentiary value of exhibit 16.

We have not overlooked defendants' other contention that they were prejudicially denied the right to a jury trial by the trial court's entertainment of the action as a lien-foreclosure proceeding. Since we hold that plaintiff has completely waived all his lien rights, it clearly follows that a jury determination will be available under Rule 38.01 of Rules of Civil Procedure unless waived.

The order of the trial court is reversed and a new trial is granted in accord with this opinion.

Reversed.