The MINNEAPOLIS GRAND,
LLC, et al., Respondents,

v.

GALT FUNDING LLC, Appellant.

No. A10–257.

Court of Appeals of Minnesota.

Nov. 30, 2010.

Allen E. Christy, Jr., Timothy J. Grande, Patrick C. Summers, Mackall, Crounse & Moore, PLC, Minneapolis, MN, for respondents.

Michael W. Haag, Nathan J. Kavlie, Foley & Mansfield, P.L.L.P., Minneapolis, MN, for appellant.

Considered and decided by LARKIN, Presiding Judge; HUDSON, Judge; and ROSS, Judge.

## OPINION

LARKIN, Judge.

In this proceeding to foreclose a mortgage lien by advertisement, appellant lienholder challenges the district court's order setting aside the foreclosure and sheriff's sale and its ruling on the parties' cross-motions for summary judgment on respondent property-owners' declaratory-judgment cause of action. Respondents sought a declaration that appellant is required to accept, under Minn.Stat. § 515B.3–117(a), respondents' post-foreclosure tender of the portion of the mortgage debt that is attributable to respondents' property, which consists of four units in a common-interest community, and to release the property from the mortgage lien. The district court set aside the foreclosure and sheriff's sale on equitable grounds to allow respondents to exercise their proportionate tender-and-release right under section 515B.3–117(a). Because the district court abused its discretion by ordering equitable relief and erred as a matter of law by awarding summary judgment for respondents instead of appellant, we reverse and remand for judgment in appellant's favor.

## FACTS

This case arises out of the financing of a failed real-estate development in Minneapolis called the Chicago Commons. The development contained 81 residential units along with retail and commercial space. The project developer, Chicago Commons Corporation (CCC), obtained primary financing for the project from Marshall Bank. This loan was secured by a duly-recorded mortgage.

During the fall of 2005, after construction on the project had begun, CCC sought additional funding for the project. Appellant Galt Funding LLC provided $1.5 million in financing to CCC. This loan was secured by a duly-recorded second mortgage. After Galt's mortgage had been recorded, four individuals, also respondents in this action, purchased condominiums in the complex (units 210, 305, 411, and 412). The proceeds from the sale of these units were paid to Marshall, and Marshall released the four units from its mortgage lien. Galt did not receive any money from the sale of the four units and did not release the units from its mortgage lien.

In December 2005, Marshall notified CCC that it was in default under the terms of their loan agreement and sent CCC a notice of acceleration. Marshall entered into a voluntary-foreclosure agreement with CCC and foreclosed its lien on the complex, exclusive of the four units that Marshall had previously released from its lien. At the ensuing sheriff's sale, Marshall bid the balance of its loan. Neither Galt nor any other person redeemed the property from the sale. Marshall therefore obtained title to the entire complex, less the four units that were previously released, and Galt's lien interest against the complex was extinguished as to all but the four units. *See* Minn.Stat. § 580.24 (2008) (providing for redemption rights of creditors to avoid forfeiture of their interest in mortgaged property).

Marshall sold its interest in the complex to Tria Properties LLC, which later assigned its interest to respondent Minneapolis Grand. The four individual unit owners also sold their units to Grand. The title commitment for Grand's purchase of these four units notes Galt's mortgage of record as to these units. As a result of these transactions, Grand held title to the

entire complex, subject to Galt's lien against the four units.

In the spring of 2008, Galt began proceedings to foreclose its mortgage on the four units by advertisement. Galt provided notice of the foreclosure and sheriff's sale to Grand by publishing the notice of foreclosure for six consecutive weeks and by personally serving the occupants of the four units. *See* Minn.Stat. § 580.03 (2008) ("Six weeks' published notice shall be given that such mortgage will be foreclosed by sale of the mortgaged premises or some part thereof, and at least four weeks before the appointed time of sale a copy of such notice shall be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises, if the same are actually occupied."). Galt stated the balance owed on its entire mortgage as $1,949,104.15. *See* Minn.Stat. § 580.04 (2008) ("Each [foreclosure] notice shall specify ... the amount claimed to be due on the mortgage on the date of the notice[.]"). None of the respondents objected or otherwise responded to the notice of foreclosure.

On April 10, the units still subject to Galt's mortgage were individually auctioned off at a sheriff's sale. *See* Minn. Stat. § 580.08 (2008) ("If the mortgaged premises consist of separate and distinct farms or tracts, they shall be sold separately, and no more farms or tracts shall be sold than are necessary to satisfy the amount due on such mortgage at the date of notice of such sale, with interest, taxes paid, and costs of sale."). Galt bid the existing balance of its loan, $1,979,161.04, against the units, paying $415,623.82 for unit 210, $415,623.82 for unit 305, $653,123.14 for unit 411, and $494,790.26 for unit 412. None of the respondents bid at the sheriff's sale. However, on September 15, Grand tendered, under section 515B.3–117(a), a payment of $94,148.96 to Galt to satisfy the portion of the Galt mortgage that was attributable to the four units. Galt refused this tender and demanded payment of the full amount of its bids at the sheriff's sale. *See* Minn.Stat. § 580.23, subd. 1(a) (2008) ("When lands have been sold in conformity with the preceding sections of this chapter, the mortgagor ... may redeem such lands ... by paying the sum of money for which the same were sold....").

On September 23, during the statutory redemption period, Grand brought this action seeking a declaratory judgment that Galt must comply with section 515B.3–117(a) and thereby accept Grand's tender of a proportionate payment and release its lien against the four units. Grand asserted that Galt must allocate its mortgage against all 81 units in the complex, against which Galt's mortgage lien had been recorded, and that Galt could not foreclose the entire mortgage-lien loan balance against the four units that remained subject to the lien. Grand also asserted causes of action for equitable estoppel, unjust enrichment, intended third-party beneficiary, and slander of title. Lastly, Grand sought a temporary restraining order to suspend the running of the statutory redemption period.

The district court issued a temporary restraining order on October 8. Thereafter, the parties brought cross-motions for partial summary judgment on Galt's declaratory-judgment cause of action. The district court (1) set aside the foreclosure and sheriff's sale on equitable grounds; (2) granted Grand's motion for partial summary judgment and thereby declared that Galt was compelled to accept Grand's proportionate tender and release the units under section 515B.3–117(a); and (3) denied Galt's motion for partial summary judgment. Grand subsequently dismissed

its remaining causes of action, and the district court entered final judgment. This appeal follows, in which Galt asks this court to reverse the district court's order and judgment in its entirety.

## ISSUE

Did the district court err by setting aside the foreclosure and sheriff's sale on equitable grounds and thereafter declaring that Galt must accept a proportionate tender and release Grand's units under Minn. Stat. § 515B.3–117(a)?

## ANALYSIS

■■■ "On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). "We review de novo whether a genuine issue of material fact exists" and "whether the district court erred in its application of the law." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 77 (Minn.2002). "[T]he reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

■■■ The dispute in this case stems from Grand's attempt to exercise a statutory right afforded to unit owners in common-interest communities to have their units released from a mortgage lien by paying the mortgagee the portion of the debt secured by the lien that is attributable to the units. The Chicago Commons condominium complex is a common-interest community as defined by the Minnesota Common Interest Ownership Act. *See* Minn.

Stat. § 515B.1–103(10), (11) (2008) (defining "common interest community" and "condominium" for purposes of the act). Subject to certain exceptions inapplicable here, under Minn.Stat. § 515B.3–117(a), an individual unit owner in a common-interest community may have the unit owner's unit released from a lien by paying the lienholder a portion of the amount that the lien secures. The statute provides, in relevant part:

> Except in a cooperative and except as otherwise provided in this chapter or in a security instrument, an individual unit owner may have the unit owner's unit released from a lien if the unit owner pays the lienholder the portion of the amount which the lien secures that is attributable to the unit. Upon the receipt of payment, the lienholder shall promptly deliver to the unit owner a recordable partial satisfaction and release of lien releasing the unit from the lien.

Minn.Stat. § 515B.3–117(a).

The parties agree that under section 515B.3–117(a), Grand had the right, before the Galt foreclosure, to pay Galt the proportionate share of the debt secured by Galt's mortgage and attributable to the four units and to have those units released from Galt's lien. But the parties disagree regarding whether Grand could exercise this right after the encumbered units were sold at the sheriff's foreclosure sale. This issue is the crux of the parties' dispute, for Grand made no attempt to have its units released under section 515B.3–117(a) before the sheriff's sale. Instead, Grand tendered a proportionate payment of $94,-148.96[1] to Galt during the statutory re-

1. This payment was calculated pursuant to section 515B.3–117(a), which provides:
 The portion of the amount which a lien secures that is attributable to the unit shall

be equal to the total amount which the lien secures multiplied by a percentage calculated by dividing the common expense liability attributable to the unit by the common ex-

demption period following the sheriff's sale. And this is how the issue was framed in the summary-judgment proceeding in district court. Grand requested a declaration that Galt was required to accept Grand's proportionate tender under section 515B.3–117(a), and Galt countered that Grand's assertion that it was entitled to redeem the units after the sheriff's sale at less than the amounts that Galt bid fails as a matter of law.

But the district court did not expressly rule whether, under section 515B.3–117(a), an individual unit owner may have the unit released from a lien by paying the lienholder a proportionate share of the secured debt *after* the unit has been sold at a sheriff's foreclosure sale. Although the district court declared that Galt was compelled to accept Grand's proportionate tender under Minn.Stat. § 515B.3–117(a), the district court *first* ordered that the foreclosure and sheriff's sale be set aside on equitable grounds, thereby returning the parties to their pre-sheriff's-sale positions and avoiding the timing issue. The district court effectively redefined the issue as whether Grand was entitled to obtain release under section 515B.3–117(a) *before* a sheriff's foreclosure sale—a proposition with which Galt agrees.

 A district court generally cannot grant equitable relief unless legal relief is unavailable. *See ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 305 (Minn.1996) ("A party may not have equitable relief where there

is an adequate remedy at law available."). Grand requested legal relief: enforcement of its statutory right to have its units released from Galt's lien by tendering a proportionate payment. The district court responded with an award of equitable relief. The district court's response reflects its implicit [2] and necessary conclusion that Grand was not entitled to legal relief under section 515B.3–117(a) once the units were sold at the sheriff's foreclosure sale.

Galt cites *State v. Zacher*, 504 N.W.2d 468 (Minn.1993), for the proposition that its original mortgage lien, which secured the balance of its loan, was satisfied when it purchased the units for the amount of the outstanding debt at the sheriff's sale and that it obtained a new lien, which secured its bids at the sheriff's sale. In *Zacher*, the Minnesota Supreme Court held that "when a mortgagee purchases the mortgaged property at a foreclosure sale for the full amount of the debt, the property continues to be subject to the mortgage for the purposes of Minn.Stat. § 609.615 [imposing criminal liability on whoever removes or damages real property that is subject to a mortgage with intent to impair the value of the security] until the redemption period expires." *Id.* at 473. Although the precise issue in *Zacher* was whether the property continued to be subject to the mortgage for the purpose of imposing criminal liability under Minn. Stat. § 609.615 (2008), *id.* at 470, the court's analysis is instructive and tends to support Galt's position.

pense liability attributable to all units against which the lien has been recorded, or in the case of a lien under subsection (b), the units against which the lien is permitted or required to be recorded.
Minn.Stat. § 515B.3–117(a).

**2.** The district court's temporary restraining order stayed expiration of the redemption period. If the district court believed that Galt was obligated to accept Grand's proportion-

ate tender during the redemption period following the sheriff's sale, there was no need to set aside the sale. As the district court explained, "the sheriff's sale of the [u]nits to Galt must be set aside in order to allow [Grand] the opportunity to exercise [its] proportional tender rights under § 515B.3–117(a) and discharge any valid lien that Galt may have on the units."

■ While the supreme court determined that the mortgagee's security interest in the encumbered property continues to exist after the mortgagee purchases the property at a sheriff's sale for the amount of the outstanding mortgage debt, the court recognized that, post sheriff's sale, the security interest secures the amount bid at the sale and not the original debt. *Id.* at 471. "[W]hen the mortgagee is the purchaser at a foreclosure sale, neither his mortgage as a muniment of title nor his interest in the mortgaged premises is discharged or extinguished; . . . he has a lien on the premises and holds them *for the security of his bid* until the time to redeem expires." *Id.* (emphasis added). Under these circumstances, the mortgagee "continues to have a lien on the premises for the amount of the purchase price," and "[u]ntil the time to redeem expires, he has a lien on the premises, and holds them *for the security of his bid.*" *Id.* (emphasis added) (quotation omitted).

Galt argues, as it did in the district court, that the sale of the encumbered units at the sheriff's sale satisfied the mortgage debt and resulted in four new liens, which secured the bid prices for the individual units. The district court summarized Galt's argument as follows:

> Galt argues that [Grand] lost [its] proportional-tender rights under § 515B.3–117(a) upon its purchase of the Units at the sheriff's sale after the foreclosure of the Galt mortgage. Galt's argument is premised upon the idea that upon foreclosure of a lien, the original lien is extinguished and converted into a "new" lien securing the bid at the foreclosure sale. . . . In effect, Galt's argument is that [Grand's] tender under [§ 515B.3–117(a) ] was untimely and that [its] tender rights under [the statute] were extinguished by the sheriff's sale. . . .

Next, the district court concluded that "the sheriff's sale created a new lien on the [u]nits for the full amount of Galt's bid at the sale." This conclusion is consistent with the reasoning in *Zacher:* when a mortgagee purchases the secured property at a foreclosure sale, the mortgagee continues to have an interest in the property but the interest secures the amount paid at the sale instead of the original debt. *See id.* ("[The mortgagee's] interest in the premises is *practically* the same after the sale as before, *except the purchase price* must be repaid to him by the mortgagor, with interest, within the year, or his title under his mortgage becomes absolute." (emphasis added) (quotation omitted)).

The debt associated with Galt's mortgage lien was satisfied as a result of the foreclosure and sale of the four encumbered units. By purchasing the units at the sheriff's sale, Galt maintained its security interest in the units; but Galt's interest changed from one that secured its original mortgage debt to one that secures its bid prices. *See id.* Any post-sheriff's-sale release or redemption attempt by Grand must be based on the security interest that exists after the sale and not on the security interest that was satisfied as a result of the sale. Thus, Grand is not entitled to tender a proportionate payment that is calculated under section 515B.3–117(a) and based on Galt's original mortgage lien. Instead, Grand must comply with the statutory redemption process and pay the amounts that Galt bid. *See* Minn.Stat. § 580.23, subd. 1(a) ("When lands have been sold in conformity with the preceding sections of this chapter, the mortgagor . . . may redeem such lands . . . by paying the sum of money for which the same were sold. . . .").

■■ We therefore agree with the district court's implicit conclusions that Grand is not entitled to legal relief under section

515B.3–117(a) because Galt's mortgage lien has been foreclosed and that to provide Grand with relief under 515B.3–117(a), the court needed to look to equity. Thus, we next consider whether the district court erred by setting aside the foreclosure and sheriff's sale on equitable grounds. When reviewing an equitable remedy, "[appellate courts] have not interfered unless the [district] court clearly abuses its discretion." *Lilyerd v. Carlson,* 499 N.W.2d 803, 811 (Minn.1993). A district court abuses its discretion when its findings are not supported by the record or it misapplies the law. *Braend ex rel. Minor Children v. Braend,* 721 N.W.2d 924, 927 (Minn.App. 2006).

■ The district court determined that "the undisputed facts of the case require this court to set aside the foreclosure and sheriff's sale," relying, as a matter of law, on its "equitable powers to set aside a foreclosure sale when a creditor overstates a claimed debt that has been foreclosed." There are two problems with this approach. First, the district court relied on an unpublished opinion of this court and an Alaskan case as support for its conclusion that an overstatement of debt is a valid reason for setting aside a sheriff's foreclosure sale. *See Hargreaves v. Fed. Deposit Ins. Corp.,* C9–89–1966, 1990 WL 77060 (Minn.App. June 12, 1990); *Semlek v. Nat'l Bank of Alaska,* 458 P.2d 1003 (Alaska 1969). Neither unpublished opinions of this court, nor decisions from foreign jurisdictions, are binding precedent. *See* Minn. Stat. § 480A.08, subd. 3(c) (2008) (stating that "[u]npublished opinions of the Court of Appeals are not precedential"); *Mahowald v. Minn. Gas Co.,* 344 N.W.2d 856, 861 (Minn.1984) (noting that decisions from foreign jurisdictions are not binding as authority).

Second, the district court's conclusion that Galt overstated its debt is inconsistent with applicable law and the undisputed facts in this case. In concluding that Galt overstated its claimed debt, the district court reasoned that Grand's units were subject to a "proportional lien, not a lien in the full amount of the Galt loan," that section 515B.3–117(a) limits the amount of Galt's lien that could be asserted against the units, and that section 515B.3–117(a) requires proportionate division of Galt's lien among all of the units against which the lien had originally been recorded. The district court therefore concluded that Galt's attempt to foreclose the entire outstanding balance of the debt secured by its lien against the four units was improper, that "Galt vastly overstated any lien it could legitimately claim on the [u]nits," and that such overstatement required the set aside of the sheriff's sale as void.

The district court relied on the following language in section 515B.3–117(a) as support for its conclusion that Grand's units were subject to a proportionate lien:

> The portion of the amount which a lien secures that is attributable to the unit shall be equal to the total amount which the lien secures multiplied by a percentage calculated by dividing the common expense liability attributable to the unit by the common expense liability attributable to all units against which the lien has been recorded. . . .

Minn.Stat. § 515B.3–117(a).

But this language simply provides the method of calculating the payment that must be tendered if an individual unit owner elects to exercise the proportionate tender-and-release right provided under section 515B.3–117(a). And while section 515B.3–117(a) provides a mechanism by which a unit holder may elect to have the unit released from a lien by tendering a proportionate payment, it does not limit the amount that the lienholder may assert in a proceeding to foreclose the lien. The

plain language of section 515B.3–117(a) does not in any way limit the lienholder's statutory foreclosure rights or otherwise modify the foreclosure process. Indeed, section 515B.3–117(a) does not refer to foreclosure procedures or redemption rights.

■■■ "[I]f the language of a statute is clear and free from ambiguity, our role is to enforce the language of the statute, and not explore the spirit or purpose of the law." *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 759 (Minn.2010). Because the language of the statute is clear, there was no occasion for the district court to construe it as limiting Galt's foreclosure rights or the foreclosure process set out in statutes. *See State v. Anderson,* 683 N.W.2d 818, 821 (Minn.2004) ("When the text of a law is plain and unambiguous, we must not engage in any further construction." (quotation omitted)). The district court nonetheless interpreted section 515B.3–117(a) as requiring Galt to limit its foreclosure action to the portion of its loan that was attributable to the four units and thereby extended application of the proportionate-tender calculation in section 515B.3–117(a) to foreclosure proceedings. This extension was inappropriate. *See Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987) ("[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987).

If the legislature wanted to authorize or require proportionate liens where common-interest communities are concerned, it could have done so. We note that the legislature has authorized proportionate liens in other contexts. *See* Minn.Stat. § 514.09 (2008) ("A lienholder who has contributed to the erection, alteration, removal, or repair of two or more buildings or other improvements ... may file one

statement for the entire claim, embracing the whole area so improved; or, if so electing, the lienholder may apportion the demand between the several improvements, and assert a lien for a proportionate part upon each, and upon the ground appurtenant to each, respectively."). Similarly, if the legislature wanted to limit common-interest-community foreclosure proceedings to the amount of the debt attributable to the unit(s) foreclosed upon or to prohibit foreclosure of the entire secured debt against less than all of the units originally encumbered by the lien, it could have done so. And the legislature could have easily provided that a common-interest-community unit owner's right to redeem after a sheriff's foreclosure sale is governed by section 515B.3–117(a), instead of the otherwise applicable redemption statutes. But the legislature has not enacted any of these policies and "our rules of construction forbid adding words or meaning to a statute that are purposely omitted or inadvertently overlooked." *Premier Bank,* 785 N.W.2d at 760 (quotation omitted).

Finally, we do not share the district court's concern that "[s]anctioning Galt's conduct in this case would gut the proportional-tender protections provided to unitholders of units in common-interest ownership communities under § 515B.3–117(a)." These unit owners retain the right to tender proportionate payment and obtain release of their units. But the right is not self-executing, and it is time limited. Once the unit is purchased at a sheriff's sale conducted in accord with statutory foreclosure requirements, the original lien is extinguished and the unit owner may no longer have the unit released from that lien under section 515B.3–117(a).

For these reasons, we conclude that the district court inappropriately construed section 515B.3–117(a) as limiting Galt's

foreclosure rights under Minn.Stat. §§ 580.01–.30 (2008). Minnesota law expressly provides that in a foreclosure by advertisement, the foreclosing lienholder must state the amount claimed to be due on the mortgage. Minn.Stat. § 580.04. Galt stated the balance owed on its mortgage in its foreclosure notice consistent with statute and did not overstate its debt. Moreover, there is no dispute that Galt complied with the explicit requirements of a foreclosure by advertisement under Minn.Stat. §§ 580.03, 04. Thus, the district court's conclusion that Galt overstated the amount of its lien and its suggestion that Galt acted in bad faith are not supported by law or fact.

Equitable relief is meant to remedy inequity, unjust enrichment, and bad-faith conduct. *See Southtown Plumbing, Inc. v. Har–Ned Lumber Co., Inc.,* 493 N.W.2d 137, 140 (Minn.App.1992) ("The right of recovery for unjust enrichment is equitable."); *Keough v. St. Paul Milk Co.,* 205 Minn. 96, 122, 285 N.W. 809, 823 (1939) (finding that certain action was "oppressive and evince[d] a bad faith sufficient to justify equitable intervention"). The undisputed facts of this case reveal none of the above. Despite notice of the foreclosure proceeding and sale, Grand did not attempt to have its units released from Galt's lien by tendering a proportionate payment under section 515B.3–117(a) until more than five months after the duly-executed sheriff's sale. And there is no unjust enrichment. Galt lent CCC $1.5 million dollars. At the sheriff's sale, Galt bid $1,979,161.04 in an effort to recover its original loan amount plus interest. In its proportionate tender attempt, Grand acknowledged that, as of September 15, 2008, the "current balance of the Galt mortgage [was] $2,101,539.16." Grand also acknowledges that the current estimated market value of the units is only

$702,000. Therefore, contrary to Grand's claim, Galt has not received a windfall.

Galt's only fault is failing to interpret section 515B.3–117(a) as requiring a foreclosing lienholder in a common-interest-community foreclosure proceeding to apportion its pre-foreclosure lien among all of the units originally encumbered by the lien for purposes of a post-foreclosure tender by a unit owner. The statute's plain language does not require this approach and no appellate court has interpreted the statute in this manner. On these undisputed facts, we conclude that there is no basis for equitable relief and that the district court abused its discretion by setting aside the foreclosure and sheriff's sale. We therefore reverse the set-aside.

The district court's award of summary judgment for Grand and its denial of summary judgment for Galt, concerning Grand's right to relief under section 515B.3–117(a), was appropriate only if the district court properly set aside the foreclosure and sheriff's sale. In the absence of the set-aside, the district court's summary judgment determination was in error: an individual unit owner may not tender a proportionate payment and obtain release of the unit under section 515B.3–117(a) after the unit is sold at a duly-executed sheriff's foreclosure sale. Accordingly, Grand is not entitled to relief under section 515B.3–117(a). We therefore reverse the district court's award of partial summary judgment in Grand's favor and its denial of Galt's request for summary judgment, and we remand for entry of summary judgment in Galt's favor consistent with this opinion.

## DECISION

The proportionate tender-and-release right under Minn.Stat. § 515B.3–117(a) may not be exercised after the encumbered unit is sold at a duly-executed sher-

iff's foreclosure sale. Because Grand did not tender its proportionate payment under section 515B.3–117(a) until after its units were sold, Grand is not entitled to legal relief. And the district court abused its discretion by setting aside the foreclosure and sheriff's sale to allow Grand to obtain relief under section 515B.3–117(a). In the absence of the set-aside, the district court's determination regarding the parties' cross-motions for summary judgment was in error. We therefore reverse and remand for entry of judgment in Galt's favor.

**Reversed and remanded.**