*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1878**

David P. Cook,
Appellant,

vs.

Wendi C. Wicktor-Heinks,
Respondent.

**Filed August 18, 2014
Affirmed
Reyes, Judge**

Isanti County District Court
File No. 30CV11223

Michael J. Froelich, Froelich Law Office, Ltd., St. Paul, Minnesota (for appellant)

Rhonda J. Magnussen, Black, Moore, Magnussen, Ltd., Elk River, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Kirk, Judge.

## U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

This appeal arises from a district court order awarding damages to appellant/cross-respondent for expenses he incurred from 2006 to 2009 for the benefit of respondent/cross-appellant. Appellant/cross-respondent appeals the district court's failure to impose a constructive trust on two properties owned by respondent/cross-

appellant individually. Respondent/cross-appellant appeals the district court's award of damages, claiming that the action is barred by anti-palimony statutes, and alternatively argues that the district court should have considered all property owned by the parties and each party's expenses and profits in calculating the damages award. We affirm.

## FACTS

After having been in a personal relationship for a couple of years, appellant/cross-respondent David Cook and respondent/cross-appellant Wendi Wicktor-Heinks began cohabitating. At the time that they began their relationship, Cook owned and operated a floor-covering business and owned several parcels of real estate, including farmland and houses. Wicktor-Heinks was a licensed real-estate broker and a certified real-estate appraiser who owned her own home.

Cook and Wicktor-Heinks opened joint bank accounts at three banks, and all of the deposits they made between August 1999 and December 2004 went into their joint accounts. They used combined resources to purchase and pay the expenses, repairs, debt, taxes, insurance, and other costs associated with several parcels of real property owned by either party, and they expended joint funds, time, skill, and labor to renovate and enhance their home. Proceeds from the sale of properties were deposited into their joint accounts. Additionally, the parties used combined resources, including time, skill, and labor, to grow crops, purchase farm equipment, service debt, and maintain a farming operation, which involved raising buffalo and horses.

Cook and Wicktor-Heinks ended their personal relationship in early 2006, and Cook moved out of their shared home. Each party retained title to the real property that

they owned in his or her individual name. They held a public auction to sell their joint personal property and divided the proceeds. Cook continued to pay expenses related to the parties' buffalo-farming operation, and they shared in the proceeds received from the sale of real estate in his name after their relationship ended. Cook and Wicktor-Heinks jointly maintained the buffalo and horses until September 2009, when Cook stopped contributing time, money, labor, or skill in caring for the animals because Wicktor-Heinks no longer allowed him onto the property.

Thereafter, Cook commenced this action against Wicktor-Heinks, seeking the imposition of a constructive trust against real property located near Princeton and held in Wicktor-Heinks's name individually, claiming that Wicktor-Heinks would be unjustly enriched if she were to keep the entire net value of the properties as well as the buffalo. The two parcels in dispute are referred to as the buffalo property, which is where the parties lived when they cohabitated and the buffalo-farming operation is maintained, and the Hjelm property. Cook alleged that the parties had an agreement, amounting to a joint venture, to increase their individual net worth by commingling assets and incomes, and he sought to recover the expenses he incurred in furtherance of this agreement. Wicktor-Heinks denied the claims, citing anti-palimony statutes, and alternatively counterclaimed, arguing that if there was a joint venture between the parties, the court should factor in all income and expenses related to the property of both parties from the beginning of their relationship to prevent unjust enrichment of Cook.

A three-day bench trial was held, and the district court heard extensive testimony from both parties who testified about their joint accounts, acquisition of the disputed

properties and other real estate, their contributions toward the raising of buffalo and horses, and their motivations for all of these actions. The district court determined that Cook and Wicktor-Heinks had a personal cohabitating relationship until 2005 and thereafter engaged in a joint venture. The court awarded Cook damages in the amount of $135,704.31, based on the expenses he incurred to benefit the buffalo and Hjelm properties between 2006 and 2009, denied his request to impose a constructive trust, and dismissed all other claims of the parties. Both parties moved for amended findings, but the district court denied all substantive changes, and judgment was entered. This appeal and cross-appeal followed.

## D E C I S I O N

Cook argues that the district court erred by failing to find that a joint venture between the parties commenced in 1999 and by refusing to impose a constructive trust on the buffalo and Hjelm properties, contending that the anti-palimony statutes are inapplicable. Wicktor-Heinks argues that there was no joint venture between the parties at any time because no agreement existed between the parties. She also argues that the anti-palimony statutes continued to apply after the parties stopped cohabitating because their continued dealings were their attempt "to unwind their commingled affairs." We disagree with both parties.

On thorough review of the district court order, we believe that the district court based its award of damages to Cook on equitable principles. "Equitable relief is meant to remedy inequity, unjust enrichment, and bad-faith conduct." *Minneapolis Grand, LLC v. Galt Funding LLC*, 791 N.W.2d 549, 558 (Minn. App. 2010). "In equity the kinds and

4

forms of specific remedies are as unlimited as the powers of such courts to shape relief awarded in accordance with the circumstances of the particular case." *Prince v. Sonnesyn*, 222 Minn. 528, 538, 25 N.W.2d 468, 473 (1946). A district court has broad discretion when fashioning an equitable remedy, *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 524 (Minn. 1979), and we review these equitable determinations for an abuse of that discretion, *Wilson v. Skogerboe*, 379 N.W.2d 696, 698-99 (Minn. App. 1986).

The record supports the district court's finding that the parties commingled assets and shared responsibilities from 1999 through 2005 because they considered themselves to be family and lived as though they were married. When the relationship ended, they took steps to divide property, both real and personal, and split the proceeds of property that they sold. In addition, they both continued to care for the livestock. The behavior of the parties after they ended their cohabitation provided sufficient grounds for the district court to find a quasi-contract between Cook and Wicktor-Heinks and award equitable relief.

Unjust enrichment, also known as a quasi-contract, is an equitable doctrine used to establish a right of recovery when there is no contract between the parties, but where one party confers a benefit on the other and retention of that benefit is not legally justifiable. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). This doctrine is based in equity, not on the intentions or promises of the parties, and the remedy is created and imposed by law "to prevent unjust enrichment at the expense of another." *Lundstrom Const. Co v. Dygert*, 254 Minn. 224, 231, 94 N.W.2d 527, 533

5

(1959). Equitable relief for unjust enrichment requires that: "(1) a benefit be conferred by the plaintiff on the defendant; (2) the defendant accept the benefit; [and] (3) the defendant retain the benefit although retaining it without payment is inequitable." *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. App. 2011), *review denied* (Minn. Aug. 16, 2011). Such claims "do not lie simply because one party benefits from the efforts or obligations of others," but instead because a party is illegally, unlawfully, or immorally enriched at the expense of another. *Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 440 (Minn. App. 2004) (quotations and citations omitted), *review denied* (Minn. June 29, 2004).

While Cook maintains that Wicktor-Heinks was also unjustly enriched during their cohabitation, the district court found, and the record supports its finding, that both parties contributed assets and resources, essentially conferring benefits back and forth. The district court did not abuse its discretion by determining that Wicktor-Heinks was not unjustly enriched prior to 2006. The record supports the finding that Cook conveyed benefits to her because of their personal relationship and that he received benefits from Wicktor-Heinks for the same reason, so retention of any surplus benefits by Wicktor-Heinks is not inequitable or immoral. Further, it was not an abuse of discretion for the district court to find that Wicktor-Heinks's retention of benefits after the end of the relationship, without conveying any return benefits, was inequitable.

The facts of this case show that Cook conveyed a benefit to Wicktor-Heinks after the conclusion of their relationship by sharing real estate proceeds from property titled in his name only and by caring for the buffalo and horses, in part through growing and

harvesting feed for the animals. Wicktor-Heinks retained these benefits by asserting a sole-ownership right to the animals, alleging Cook's abandonment, and by accepting money given to her by Cook, but refusing his claimed interest in the value of property solely owned by her. Though Cook's actions seem to reflect the behavior of the parties during their relationship, as he continued to share the proceeds from the sale of his properties with Wicktor-Heinks, the district court could reasonably conclude that his actions were not gratuitous, but in anticipation that the property of the parties would continue to be divided following the end of the relationship. And it would be inequitable or immoral for Wicktor-Heinks to retain the benefits she received from Cook, which stemmed from a long relationship between the parties with at least some mutual understanding that the property they owned during the relationship would be divided.

Wicktor-Heinks contends that the district court's calculation of damages does not fairly reflect the debt and assets of the parties, considering only Cook's expenses, without taking into account the benefits Cook obtained from the buffalo business or her contributions. But while Wicktor-Heinks claims that Cook benefitted by selling the meat from the buffalo, she did not present any evidence in support of this claim nor did she quantify this benefit. Wicktor-Heinks also failed to present evidence quantifying her contributions. *See Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003) ("[A] party cannot complain about a district court's failure to rule in her favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question."), *review*

7

*denied* (Minn. Nov. 25, 2003). Accordingly, the district court did not abuse its discretion by failing to account for all of the benefits to and contributions of the parties.

Moreover, the district court has the power and discretion to shape equitable relief appropriate under the particular facts of the case. *Prince*, 222 Minn. at 538, 25 N.W.2d at 473. The record supports the district court's finding of Cook's expenses from 2006 to 2009 and there is no evidence supporting a finding of Cook's benefit or Wicktor-Heinks's contribution. We will not substitute our judgment for that of the district court, which was in a superior position to assess the evidence and determine the appropriate relief.

**Affirmed.**