This opinion will be unpublished and
 may not be cited except as provided by
 Minn. Stat. § 480A.08, subd. 3 (2014).

 STATE OF MINNESOTA
 IN COURT OF APPEALS
 A16-0075

 Tony’s Construction,
 Appellant,

 vs.

 Kraus-Anderson Construction Company,
 Defendant,

 St. Louis County Schools - ISD #2142,
 Respondent.

 Filed July 5, 2016
 Affirmed
 Kirk, Judge

 St. Louis County District Court
 File No. 69VI-CV-14-740

Gordon C. Pineo, Deal & Pineo, P.A., Virginia, Minnesota (for appellant)

John M. Colosimo, Bonnie A. Thayer, Colosimo, Patchin & Kearney, Ltd., Virginia,
Minnesota (for respondent)

 Considered and decided by Kirk, Presiding Judge; Stauber, Judge; and Bjorkman,

Judge.

 UNPUBLISHED OPINION

KIRK, Judge

 Appellant-subcontractor challenges the district court’s grant of summary judgment

to respondent-owner, a school district, on appellant’s claims of quantum meruit, unjust
enrichment, quasi or implied contract, and promissory estoppel. Appellant argues that

genuine issues of material fact preclude summary judgment and that the district court erred

by failing to address whether the general contractor served as respondent’s agent. We

affirm because appellant’s release of the general contractor from liability released

respondent from liability as well.

 FACTS

 This appeal centers on the alleged nonpayment of a subcontractor who worked on

the Cherry School renovation project. The relationship between the parties is as follows:

in August 2010, respondent St. Louis County Schools - ISD #2142 (ISD) hired Johnson

Controls, Inc. (JCI) to act as the program manager for the renovation project. JCI hired

defendant Kraus-Anderson Construction Company to serve as the construction manager of

the project. Other contracts described Kraus-Anderson as a “subconsultant” to the

renovation project. Hammerlund Construction, a general contractor, accepted appellant

Tony’s Construction’s bid to perform subcontracting work including excavation, backfill

footings, and installation of erosion control and storm ponds.

 In December 2014, Tony’s filed a complaint against Kraus-Anderson and ISD under

the theory of quantum meruit, alleging that it had not been paid for change-order work

performed under the direction of Kraus-Anderson and with Hammerlund’s knowledge.

Tony’s later amended its complaint to include claims of unjust enrichment, quasi or implied

contract, and promissory estoppel.

 In a deposition, Anthony Lastovich, owner of Tony’s, testified that he and three of

his employees worked at the Cherry School renovation site. During the renovation, Tony’s

 2
executed several change orders. A change order was a new or different task that Tony’s

was asked to perform. Before Tony’s would begin work on a change order, Lastovich

would determine the cost of labor and materials to complete the task and provide

Hammerlund with this information. Hammerlund would then authorize Tony’s to perform

the task, and Tony’s would complete the change order. The contractual agreement between

Hammerlund and Tony’s stated that Tony’s agreed to secure Hammerlund’s consent and

written authorization before performing any change-order work.

 During the early stages of the renovation, Hammerlund and Tony’s followed the

change-order process as outlined in their contractual agreement. But as the workers faced

a looming project deadline, Lastovich and his employees began taking directions on change

orders from Kraus-Anderson’s onsite project manager despite the fact that Tony’s did not

have a direct contractual relationship with Kraus-Anderson. Zachary Preble,

Hammerlund’s project manager for the renovation, testified in a deposition that the project

was plagued with problems and did not run smoothly. Lastovich testified that Kraus-

Anderson’s project manager ordered that any problems “be dealt with almost

immediately.” He also told Lastovich to keep track of his work and hours and that Kraus-

Anderson would pay for the change-order work at the end of the project. Lastovich

expected that payment for the completed change-order work would be funneled from

Kraus-Anderson to Hammerlund, who would then pay Tony’s.

 At the end of the project, Lastovich submitted 19 invoices for unpaid change orders

totaling $76,579.62. Prior to initiating this action, Lastovich settled his dispute with

 3
Hammerlund through a Pierringer release for $15,366.29. In 2015, Tony’s dismissed its

claim against Kraus-Anderson with prejudice.

 Tony’s sued ISD under the theory of quantum meruit, quasi or implied contract, and

unjust enrichment, arguing that ISD was unjustly enriched by its work on the renovation

project, citing unusual circumstances including a poorly run renovation project, the large

number of change orders, and the fact that the parties did not always follow the prescribed

change-order process as outlined in the contract. Tony’s also asserted a promissory-

estoppel claim, arguing that Tony’s had detrimentally relied on Kraus-Anderson’s promise

that Tony’s would be paid for the change-order work.

 ISD moved for summary judgment on the ground that Tony’s did not have a contract

with ISD and that ISD did not know, direct, or communicate with Lastovich or any of his

employees about Tony’s change-order work. After a hearing, the district court granted

summary judgment in favor of ISD. It dismissed Tony’s quantum meruit, quasi contract,

and unjust-enrichment claims, concluding that Tony’s failed to demonstrate that ISD

benefitted from its work through illegal, unlawful, or unjust means. Citing Lundstrom

Constr. Co. v. Dygert, it recognized that Tony’s could potentially recover if unusual

circumstances were present, such as direct contact between Tony’s and ISD, but there was

no evidence in the record that ISD knew about the change orders as they happened. 254

Minn. 224, 232, 94 N.W.2d 527, 533 (1959). It also denied Tony’s promissory-estoppel

claim, as there was no evidence of a promise between the parties. It pointed to Tony’s

admission that ISD never directed a change order or promised to pay for a change order.

 Tony’s appeals.

 4
 DECISION

 “On appeal from summary judgment, we review whether there are any genuine

issues of material fact and whether the district court erred in its application of the law.”

STAR Ctrs., Inc. v. Faegre & Benson, L.L.P., 644 N.W.2d 72, 76 (Minn. 2002). “We view

the evidence in the light most favorable to the party against whom summary judgment was

granted . . . [and] review de novo whether a genuine issue of material fact exists.” Id. at

76-77. “We also review de novo whether the district court erred in its application of the

law.” Id. at 77. “Once the moving party has made a prima facie case that entitles it to

summary judgment, the burden shifts to the nonmoving party to produce specific facts that

raise a genuine issue for trial.” Bebo v. Delander, 632 N.W.2d 732, 737 (Minn. App. 2001),

review denied (Minn. Oct. 16, 2001).

 “Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a

benefit conferred upon a defendant when retention of the benefit is not legally justifiable.”

Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 838 (Minn. 2012). A party

who prevails on an unjust-enrichment action is in essence entitled to an award in quantum

meruit. See Sharp v. Laubersheimer, 347 N.W.2d 268, 271 (Minn. 1984); see also

Hommerding v. Peterson, 376 N.W.2d 456, 459 (Minn. App. 1985) (stating that an action

for unjust enrichment “is a quasi-contractual agreement implied by law”). “A party may

recover under quantum meruit where he or she has conferred a benefit to another and has

not received reasonable compensation for this act.” Busch v. Model Corp., 708 N.W.2d

546, 552 (Minn. App. 2006).

 5
 “Unjust enrichment requires that: (1) a benefit be conferred by the plaintiff on the

defendant; (2) the defendant accept the benefit; and (3) the defendant retain the benefit

although retaining it without payment is inequitable.” Zinter v. Univ. of Minn., 799 N.W.2d

243, 247 (Minn. App. 2011). Here, the parties agree that Tony’s conferred a benefit, and

ISD received a benefit from the change orders allegedly performed by Tony’s. In

determining Tony’s unjust-enrichment claim, we are asked to determine whether ISD was

unjustly enriched “in the sense that the term ‘unjustly’ could mean illegally or unlawfully.”

Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. App. 2001) (quotation omitted).

 “Promissory and equitable estoppel imply the existence of a contract based on

promises or conduct.” Cityscapes Dev., LLC v. Scheffler, 866 N.W.2d 66, 72 (Minn. App.

2015). “A promissory estoppel claim requires: (1) a clear and definite promise; (2) that the

promisor intended to induce the promisee’s reliance; (3) that the promisee relied on the

promise to his or her detriment; and (4) that enforcement of the promise is necessary to

prevent injustice.” Zinter, 799 N.W.2d at 246.

 Minnesota law establishes that, other than the statutory right to a mechanic’s lien1

or other special statutory remedies, subcontractors generally have no right to a personal

judgment against the owner where there is no contractual relationship between them. See

Johnson & Peterson, Inc. v. Toohey, 285 Minn. 181, 183-84, 172 N.W.2d 326, 328 (1969);

Duluth Lumber and Plywood Co. v. Delta Dev., Inc., 281 N.W.2d 377, 384 (Minn. 1979);

1
 Property owned by a school district is exempt from mechanics’ liens under the common-
law public policy exemption to the mechanic’s lien statute. GME Consultants, Inc. v. Oak
Grove Dev. Inc., 515 N.W.2d 74, 75 (Minn. App. 1994).

 6
see also Lundstrom Constr. Co., 254 Minn. at 232, 94 N.W.2d at 533 (suggesting that

subcontractors might be allowed to recover against homeowners when unusual

circumstances are present); Skjod v. Hofstede, 402 N.W.2d 839, 840-41 (Minn. App. 1987)

(holding that, absent unusual circumstances such as direct contact or communication

between the owner and subcontractor, a subcontractor does not have an equitable remedy

against a homeowner for work or materials furnished if there was no contract between the

parties). But a subcontractor may be entitled to recovery if an owner is unjustly enriched

by the subcontractor’s work or under the theory of promissory estoppel.

 Caselaw describing the liability of homeowners to subcontractors contemplates

simple, well-defined contractual relationships between three parties: a homeowner who

contracts with a general contractor to complete work, and the contractor who subcontracts

all or part of the work to a subcontractor. In contrast, the case at bar presents a complex

series of relationships between five parties who have each entered into contracts with one

or more parties: an owner-school district, a program manager, a construction manager, a

general contractor, and a subcontractor. Tony’s asserts that within these contractual

relationships there is a genuine issue of material fact as to whether Kraus-Anderson acted

as the agent of ISD during the renovation project. There is a “long-standing common-law

notion that a principal is liable for the act of an agent committed in the course and within

the scope of agency.” Bedow v. Watkins, 552 N.W.2d 543, 547 (Minn. 1996). “Vicarious

liability may be imposed when a master-servant or principal-agent relationship exists

between the tortfeasor and a third party.” Urban ex rel. Urban v. American Legion Post

184, 695 N.W.2d 153, 160 (Minn. App. 2005), aff’d, 723 N.W.2d 1 (Minn. 2006).

 7
 Viewing the evidence in the light most favorable to the nonmoving party, the

deposition testimony establishes that Tony’s was placed under considerable pressure to

complete numerous change orders during the project. As the project deadline became

closer, Kraus-Anderson and Tony’s adopted a practice of going around the contractual

provision requiring Hammerlund’s written authorization prior to Tony’s performing

change-order work. Lastovich acted under the belief that he would be paid for the change-

order work at the end of the project but did not receive payment.

 Provisions within the contractual agreement between ISD and JCI also support

Tony’s argument that Kraus-Anderson acted as the agent of ISD, the principal. Sections

2.1.4 and 4.1.1 of the contract state that Kraus-Anderson is a subconsultant for the

renovation project and that “[t]he term JCI means Johnson Controls, Inc., or its

[s]ubconsultants.” Further, section 4.2.1 of the contract provides that JCI will act as ISD’s

representative during construction and that “JCI will have authority to act on behalf of

[ISD] only to the extent provided in the [c]ontract.” In essence, the contract language

establishes that Kraus-Anderson, as subconsultant, was also JCI, and it had the authority

to act on behalf of ISD.

 But despite this record evidence, we conclude that, as a matter of law, Tony’s is

unable to pursue any claim against ISD because it dismissed with prejudice all claims

against Kraus-Anderson. By releasing Kraus-Anderson, the agent, Tony’s also effectively

released the principal, ISD, from any liability including unjust enrichment and promissory

estoppel. See Booth v. Gades, 788 N.W.2d 701, 708 (Minn. 2010) (noting that the court

has “long recognized” the common-law rule that the release of the agent releases the

 8
principal); Reedon of Faribault, Inc. v. Fid. & Guar. Ins. Underwriters, 418 N.W.2d 488,

491 (Minn. 1988) (holding that the release of the insurer’s agent also released the principal

from vicarious liability); Serr v. Biwabik Concrete Aggregate Co., 202 Minn. 165, 177,

278 N.W.2d 355, 362 (1938) (stating that it is “well settled that a valid release . . . of the

servant releases the master”).

 We conclude that the district court properly granted ISD summary judgment on

Tony’s claims.

 Affirmed.

 9